HIGHLAND REALTY, INC., peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, ERICK E. KOLTHOFF, JUEZ, demandado.

*Número*: O-73-167      *Resuelto*: 31 de enero de 1975

*Dubón & Dubón* y *Rafael A. Geigel,* abogados de la peticionaria.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 1 de mayo de 1970 se radicó demanda contra la recurrente, Highland Realty, Inc., por alegados vicios de construcción de una vivienda. Mientras estaba pendiente dicho procedimiento, Highland Realty le informó al tribunal de instancia, vía moción, que expresa haberse notificado a la parte demandante, que había acudido a la Corte de Distrito de los Estados Unidos para Puerto Rico en solicitud de reorganización bajo el capítulo X de la Ley de Quiebras, 30 Stat. 544, según enmendada, 11 U.S.C.A. sec. 1 *et seq.* Acompañó la recurrente copia de orden de la Corte de Distrito, emitida el 23 de febrero de 1971, aprobando la petición, nombrando el síndico y expresando que hasta que se dictase el decreto final o hasta nueva orden, ningún acreedor de Highland Realty debía entablar o continuar pleito de ninguna índole contra dicha empresa en tribunal alguno.

La demandante original no intervino en los procedimientos ante el tribunal federal para presentar evidencia de su reclamación ni solicitar remedio de ninguna otra clase, aunque de su moción de 28 de julio de 1972 ante el Tribunal Superior se desprende que en efecto tenía conocimiento de la causa pendiente ante el tribunal federal.

El 3 de julio de 1972 el Tribunal de Distrito de los Estados Unidos para Puerto Rico emitió decreto final en el caso de Highland Realty en que aprobó el plan de reorganización radicado bajo el capítulo X, exoneró a Highland Realty de todas sus deudas, excepto lo provisto en el plan de reorganización, y prohibió permanentemente la continuación o el comienzo de litigios contra dicha deudora basados en reclamaciones o derechos existentes al tiempo de radicarse la solicitud de reorganización corporativa. Highland Realty interpuso a continuación moción de sentencia sumaria en el caso de autos, la que se denegó por el tribunal de instancia, pro-

cediendo a señalarse la vista del caso en su fondo. De esta denegatoria es que se recurre ante nos.

El capítulo X se añade a la Ley de Quiebras de 1898, *supra*, por la Ley Chandler de 22 de junio de 1938, c. 575, s. 1, 52 Stat. 883 *et seq.*, 11 U.S.C.A. sec. 501-700. Su naturaleza es fundamentalmente distinta a la de otros capítulos, pero las reglas para determinar su aplicación a Puerto Rico son idénticas.

■ En tiempos de la Ley Foraker, 12 de abril de 1900, cap. 191, sec. 32, 31 Stat. 77 *et seq.*, su Art. 34 constituía base clara de su aplicación. *Ex parte Coll*, 11 D.P.R. 51 (1906). Dicho artículo expresaba que la Corte de Distrito de los Estados Unidos para Puerto Rico tendría, entre otros fundamentos de jurisdicción, "la jurisdicción ordinaria de la Corte de Distrito de los Estados Unidos . . . ." [1] Dicho lenguaje clave se omitió al redactarse en 1917 el Art. 41 de la Ley Jones, luego parte de la Ley de Relaciones Federales. 39 Stat. 965; 48 U.S.C.A. sec. 863, 64 Stat. 319. Véase: la ley de 2 de junio de 1970, 84 Stat. 298. El Art. 9 de la Ley de Relaciones Federales provee, no obstante, base firme para la aplicación de la Ley Federal de Quiebras en Puerto Rico. [2] No consideramos que esta ley sea localmente inaplicable. Las realidades presentes de nuestro medio no chocan contra el esfuerzo del Congreso de proveer un método general uniforme de realizar las reorganizaciones corporativas. Debe recordarse, además, que la existencia de una ley federal de

---

[1] Adviértase que en *Coll* el Tribunal determina acertadamente no hacer referencia alguna al Art. I, Sec. 8, cl. 4 de la Constitución de Estados Unidos. Conforme a la opinión de White en *Downes* v. *Bidwell*, 182 U.S. 244 (1901), así como a la decisión en *Hawaii* v. *Mankichi*, 190 U.S. 197 (1903) y en otros de los Casos Insulares, Puerto Rico era un territorio no incorporado, por lo que el poder del Congreso para legislar uniformemente sobre quiebras derivaba a todas luces de otras fuentes.

[2] Dispone dicho Art. 9, en parte, que: "Las leyes estatutarias de los Estados Unidos que no sean localmente inaplicables, salvo lo que en contrario se dispusiere en la presente, tendrán el mismo efecto y validez en Puerto Rico que en los Estados Unidos . . . ."

quiebras no anula la facultad de los estados ni de Puerto Rico de contar con su propia legislación en cualquier aspecto que no conflija con el estatuto federal. En varios estados federados se han aprobado estatutos aún más atractivos que el capítulo X, de hecho, y a ellos se acude a menudo bajo determinadas circunstancias. 6 Collier, *On Bankruptcy*, sec. 0.13; *Stellwagen* v. *Clum*, 245 U.S. 605 (1918). Tampoco interpretamos que el cambio efectuado en el Art. 34 de la Ley Foraker haya obedecido a la intención de eximir a Puerto Rico de la aplicación de la Ley Federal de Quiebras y alterar la antigua situación de ley al respecto. *In re Vidal*, 233 F. 733 (1st Cir. 1916). No existe nada en el historial legislativo que así lo indique.

■ Procede, por tanto, examinar el efecto del decreto final emitido bajo el capítulo X sobre el caso pendiente contra Highland Realty en el Tribunal Superior. Bajo las reglas del capítulo X, un deudor puede ser exonerado de toda deuda o reclamación, incluyendo las no radicadas y aun aquellas en que el acreedor o reclamante no tenía conocimiento del procedimiento en reorganización. 6A Collier, *On Bankruptcy*, 14ª ed., 1972, sec. 11.18, págs. 690–694.1; *Mohonk Realty Corp.* v. *Wise Shoe Stores*, 111 F.2d 287, *cert. den.* 311 U.S. 654 (1940). Por "reclamación" se entiende "todas las reclamaciones de cualquier índole contra un deudor o su propiedad, a excepción de certificados de acciones, estén o no sujetas a prueba o admisión bajo la sección 103 de este título y sean garantizadas o no garantizadas, líquidas u objeto de determinación, fijas o condicionadas." (Traducción nuestra.) 11 U.S.C.A. sec. 506(1). Por "deuda" se entiende "toda reclamación." 11 U.S.C.A. sec. 506(6). Se han interpretado las disposiciones del capítulo X de modo que un decreto final aun puede exonerar a un deudor de sentencias ya dictadas en daños y perjuicios. *Pérez* v. *Campbell*, 402 U.S. 637 (1971). Se reconoce generalmente también, con más razón, que el hecho de que el tribunal no ordene la suspensión del caso específico

—como sucedió aquí, en que se expidió la orden de suspensión general y se detallaron ciertos pleitos, mas sin mencionarse éste—no altera los efectos del decreto final. 11 Remington, *On Bankruptcy*, 1961 rev., sec. 4391.

La parte recurrida se apoya tan sólo en nuestra decisión en *P.R.R.R. & Transport Co.* v. *Tribunal Superior*, 90 D.P.R. 55 (1964), pero ésta es distinguible del caso presente. Se trataba inicialmente allí de un procedimiento bajo el capítulo X, pero no se pudo formular un plan de reorganización aceptable y el litigio se convirtió en una quiebra ordinaria, regida por otras normas. 11 U.S.C.A. sec. 35(a)(3). Compárese: *Colón* v. *Colón*, 8 D.P.R. 15 (1905); *Roig* v. *Barletta*, 28 D.P.R. 603 (1920). La corte federal, además, dejó sin efecto en *P.R.R.R.* su orden de suspensión de dicho caso y la parte en él afectada, contrario a la situación presente, no había tenido conocimiento de los procedimientos federales en proceso.

■ Dictado el decreto final en el caso de autos y desaparecida la reclamación contra Highland Realty, carecía por tanto de jurisdicción el tribunal de instancia para continuar los procedimientos. La demandante debió haber acudido a la corte federal para solicitar que se tomase en cuenta su reclamación en la formulación y aceptación del plan de reorganización, así como para que se le permitiera continuar litigando la misma.

*Se revocará, por los fundamentos expuestos, la resolución del Tribunal Superior y en su lugar se dictará sentencia declarando sin lugar la demanda, más las costas.*